## FLANDRICK v. UNITED STATES
(two cases).

Nos. 12328, 12329.

United States District Court
S. D. California, Central Division.

May 15, 1951.

C. C. Legerton, Hollywood, Cal., for plaintiff.

Ernest A. Tolin, U. S. Atty., E. H. Mitchell and Edward R. McHale, Asst. U. S. Attys., Los Angeles, Cal., Eugene Harpole and Frank W. Mahoney, Sp. Attys. Internal Revenue, Los Angeles, Cal., for defendant.

HARRISON, District Judge.

The above entitled actions were consolidated for trial and they came on regularly for trial on the 29th day of March, 1951, before the Honorable Ben Harrison, Judge of the above entitled Court, plaintiff appearing by C. C. Legerton, her attorney of record herein, and defendant appearing by Eugene Harpole, its attorney of record herein. Trial was had without the inter-

vention of a jury, the jury having been waived. Witnesses were sworn and testified and exhibits were introduced in evidence, and based upon said testimony and evidence, after due consideration, the Court makes the following:

Findings of Fact

1. Each of the above actions is a civil action and arises under the laws of the United States providing for Internal Revenue, particularly Sections 22 and 182 of the Internal Revenue Code, 26 U.S.C.A., and jurisdiction of the actions rests upon Section 1346 of the Judicial Code of the United States, 28 U.S.C.A.

2. The plaintiff is now, and at all times herein mentioned, has been a resident of the County of Los Angeles, State of California, and at all times between May 1, 1942 and December 22, 1945, the date of his death, Albert E. Rogers, hereinafter referred to as the "decedent", and plaintiff were husband and wife. On February 7, 1946, plaintiff was duly appointed and qualified as executrix of the decedent's estate by the Superior Court of Los Angeles County, California. On May 23, 1947, all of said estate was, by said Court, distributed to plaintiff as the sole legatee thereof. On June 20, 1947, plaintiff was discharged as executrix of said estate, and plaintiff ever since has been and now is sole distributee of all of the property of said decedent's estate.

3. At and during all times herein mentioned, the defendant, United States of America, was and now is a Sovereign Power and body politic.

4. On July 1, 1943, Harry C. Westover became the duly appointed and qualified Collector of Internal Revenue of the United States for the 6th District of California and continued to act as such until October 31, 1949. Said Harry C. Westover, hereinafter referred to as the "former Collector" is not in office as Collector of Internal Revenue at the time of the commencement of the above entitled action.

5. Plaintiff and decedent were married in Los Angeles, California, in 1909. One child, born shortly thereafter, died during infancy. Their remaining years were without issue. Around 1929, they acquired an orphan, born December 4, 1927, to raise. She gained their affection, and on April 1, 1930, was by them adopted as Betty Lou Rogers, hereinafter referred to as "Betty Lou".

6. The "Rogers Pattern and Foundry Co." was commenced by decedent in Los Angeles in 1918. It was acquired with their community property. The plaintiff took part in the control and management of the business from its inception. For several years, she served as its accountant and office manager, and had equal authority to sign all checks. During her husband's absence, the plaintiff exercised general supervision and management of the affairs of the business. After she quit active work as its accountant, she returned to the plant regularly two or three days each week to mutually discuss all important business problems. She attended all conferences with their business lawyers and accountants. She continued to handle all payroll accounts, and until the businesses were finally liquidated in 1946, signed substantially all payroll checks and rendered other valuable services.

7. Between 1930 and 1942, Betty Lou became a devoted member of the family, and they began to plan for her future. Periodically, during these years, they discussed wills, trusts, gifts and other methods of creating an estate for her benefit. In 1941, the "father" was approaching 58, the "mother" 57 years of age, Betty Lou was 14, and was entering high school, and the parents consulted their attorneys and their accountants to consummate their plans for her estate.

8. On April 6, 1942, plaintiff and decedent formed two new corporations, the Rogers Pattern & Aluminum Foundry and the Rogers Bronze and Magnesium Foundry, and on April 9, 1942, another new corporation, the A. E. Rogers Co. Each corporation was organized for a separate business purpose. On May 1, 1942, a partnership was organized by and between the plaintiff, the decedent, Betty Lou and E. N. Altom, under the laws of the State of California, under the firm name and style of Rogers Pattern and Foundry Company.

These corporations and the partnership took over non-competitive portions of the former "proprietorship". The partnership was a sales organization which employed about fifteen salesmen, estimators and engineers. It was formed for a business purpose. It was not created with the primary intention of avoiding taxes. The limited partnership, Rogers Pattern and Foundry Company, was the sales organization and the outlet for the disposition of the products of the corporations owned by Albert E. Rogers, his wife and daughter. That was the general business purpose of the partnership itself. (Tr. 62, 93.) Said partnership elected to use a fiscal year period of accounting, ended on April 30th of each year. At all times during the taxable year of the partnership ended April 30, 1945, said partnership agreement was in full force and effect, and said Betty Lou was a bonafide partner thereof.

9. The 30% limited partnership interest of Betty Lou in the partnership was a gift in 1942 from her adopted parents. At about the same time the plaintiff and decedent also gave Betty Lou certain shares of the capital stock of the three corporations, valued at $58,000.00. Plaintiff and decedent made and filed with the Collector of Internal Revenue, separate gift tax returns for the calendar year 1942, and each reported thereon the following gifts to Betty Lou:

| Item No. | Description of Gift, and Donee's Name & Address | Date of Gift | Value at Date of Gift |
|---|---|---|---|
| | The following gifts were made to Lena B. Rogers, 2015 Outpost Drive, Los Angeles, as guardian of the estate of Betty Lou Rogers, a minor adopted daughter: | | |
| 1. | 120 shares of Rogers Pattern & Aluminum Foundry, a California corporation, incorporated on April 6, 1942, with principal place of business at 938 East 60th St., Los Angeles, unlisted common capital stock, par value $100. | 8–1–42 | $12,000.00 |
| 2. | 120 shares of Rogers Bronze & Magnesium Foundry, a California corporation, incorporated April 6, 1942, with principal place of business at 2901 East Slauson Ave., Huntington Park, Calif., unlisted common capital stock, par value $100 | 8–1–42 | 12,000.00 |
| 3. | 50 shares of A. E. Rogers Co., a California corporation, incorporated April 9, 1942, with principal place of business at 938 East 60th Street, Los Angeles, unlisted common capital stock, par value $100 | 8–1–42 | 5,000.00 |
| 4. | 12½% interest in the Rogers Pattern & Foundry Co., 938 East 60th Street, Los Angeles, a Limited copartnership | 5–11–42 | 1,000.00 |
| 5. | 2½% interest in the Rogers Pattern & Foundry Co., 938 East 60th Street, Los Angeles, a Limited copartnership | 9–29–42 | 500.00 |
| | Total | | $30,500.00 |
| | Less exclusions | | 4,000.00 |
| | | | $26,500.00 |

10. These gifts were completely executed and valid present gifts inter vivos, and were acted upon and treated by the parties as such. The donors clearly and unmistakably intended to, and did, absolutely and irrevocably divest themselves of all present and future title, dominion and control of the subject matter of the gifts.

Certificates showing the formation of the limited partnership were forthwith filed and recorded as required by the laws of the State of California, each showing Betty Lou to be a limited partner.

Stock certificates of the above shares of capital stock donated to her by her parents were issued forthwith by each of the corporations to the plaintiff as guardian of the estate of Betty Lou, as the shareholder of record.

Application for letters of guardianship of the estate of Betty Lou Rogers was promptly filed with the Superior Court, Los Angeles, California, and heard. The plaintiff was appointed guardian, filed the necessary bond, qualified, and until the guardianship was terminated February 27, 1946, acted as such guardian.

These gifts were not made for the purpose of relieving the parents from their obligations to support their adopted minor child. These gifts were bona fide, were made in good faith, and were not a sham for the purpose of avoiding taxes. As a limited partner, the parents did not intend Betty Lou to take part in the control or management of the business nor to render it any personal services.

11. All of the distributive share of the partnership income belonging to Betty Lou under said limited partnership agreement was annually delivered to and received by said guardian as such and by her accounted for in full to the Superior Court. All of the minor's funds were deposited with the Hollywood Branch of the California Bank, Hollywood, California, to the credit of Lena B. Rogers, as guardian of the estate of Betty Lou Rogers, a minor.

12. Betty Lou married Howard Edgar November 10, 1945. She was 18 years of age, December 4, 1945. All of her share of the partnership property, together wth the rents, issues, profits and increase thereof were delivered to her by her guardian February 25, 1946.

13. At the time the guardianship was terminated, Betty Lou sold one, Steven Mocsny, for $67,980.00, all of her partnership interest and also all of her shares of stock in the Rogers Pattern and Aluminum Foundry and in the Rogers Bronze and Magnesium Foundry. She received from Mocsny $11,330.00 cash and five promissory notes of $11,330.00 each payable to her order and maturing annually thereafter.

14. On May 6, 1946, Betty Lou and her husband executed a voluntary declaration of trust. They transferred all of her property to be held in trust for her until she attained the age of 35 years or until her death, if she died prior thereto. The plaintiff was named trustee of the trust. All income from the trust estate was to be paid and was paid to Betty Lou. Upon the termination of the trust, the trust estate was to be distributed to Betty Lou, if alive, otherwise to the distributees named in the trust agreement. Said trust agreement is still in full force and effect. On December 31, 1950, the trust estate was worth in excess of $150,000.00.

15. On December 20, 1944, the Los Angeles County Superior Court allowed the plaintiff to reimburse herself out of guardianship funds with the sum of $292.00 for school tuition, books, supplies, etc., advanced for the minor and the further sum of $150.00 per month commencing September 1, 1944, for clothing, school supplies, books, maintenance and other incidentals related thereto. Under said order of Court, the plaintiff received therefor, during the period of guardianship proceedings from the estate of Betty Lou, the total sum of $2,242.00. Between May 1, 1942 and December 31, 1950, no part of the estate of Betty Lou, during the guardianship, nor of the estate of Betty Lou, under the trust, nor any of the income therefrom was ever directly or indirectly made use of by the plaintiff or the decedent for their own benefit.

16. In addition to the foregoing gifts, these parents on November 1, 1941, purchased and gave Betty Lou a $20,000.00

endowment insurance policy issued on her life with the Occidental Life Insurance Company of Los Angeles, California. These parents paid all insurance premiums due thereon. Said insurance policy will mature on November 1, 1952, with a cash surrender value of $20,000.00.

17. Under the articles of partnership and under the actual operation of the partnership, the profit and losses during the fiscal year ended April 30, 1945, were shared in the following proportions: The limited partners, Betty Lou Rogers—Thirty per cent (30%); E. N. Altom—ten per cent (10%); The general partners, Albert E. Rogers—Thirty per cent (30%); and Lena B. Rogers—Thirty per cent (30%).

18. On August 15, 1945, plaintiff filed in the office of the former Collector her income tax return for the taxable year ended May 31, 1945, in which she included as taxable income her distributive share of the net income of said partnership and paid income taxes thereon to the said former Collector in the total amount of $29,508.57, as shown to be due by said return.

On August 15, 1945, said decedent filed in the office of the former Collector his income tax return for the taxable year ended May 31, 1945, in which he included as taxable income his distributive share of the net income of the partnership and paid income taxes on said return to the former Collector in the total amount of $29,508.57, as shown to be due by said return.

19. For the fiscal year of the partnership ended April 30, 1945, Betty Lou's distributive share of the partnership's net income was $24,100.04. The Commissioner of Internal Revenue, as a result of a review and audit, refused to recognize Betty Lou as a partner of the partnership, included said sum of $24,100.04 in the gross income of her parents for their taxable year ended May 31, 1945, and levied a deficiency income tax assessment for said year against the plaintiff in the amount of $9,116.23 together with interest thereon of $1,209.09 and against the plaintiff, as executrix of said decedent's estate, in the amount of $9,506.23, together with interest thereon of $928.09.

20. On or about February 18, 1948, the plaintiff paid the former Collector the sum of $9,601.67 and on June 1, 1948, the sum of $723.65 as additional income tax for the said taxable year, and interest thereon, and as executrix of said decedent's estate, plaintiff paid the former Collector the sum of $60.41 on July 16, 1948, and the sum of $10,373.91 on November 12, 1948, as additional income tax for the said taxable year, and interest thereon.

21. On or about April 15, 1949, the plaintiff duly filed with the former Collector a refund claim for income tax paid in respect of the taxable year ended May 31, 1945, in the amount of $9,116.23 with interest; and as sole distributee of decedent's estate, duly filed with the former Collector a refund claim for income tax paid in respect of the taxable year ended May 31, 1945, in the amount of $9,506.23 with interest. These claims were rejected by the Commissioner of Internal Revenue under date of May 1, 1950, and the plaintiff was so notified by registered mail.

Conclusions of Law

The Court concludes as a matter of law that:

1. The plaintiff has complied with all of the statutory requirements constituting conditions precedent to the institution and maintenance of this action.

2. The Court has jurisdiction of the parties and subject matter of the action.

3. Considering all the facts, the agreement, the conduct of the parties in the execution of its provisions, their statements, the testimony of distinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of the income, the purposes for which it was used, and other facts throwing light on their true intent, the parties in good faith and acting with a business purpose, intended to join together in the present conduct of the limited partnership at the time it was organized and at all times thereafter during its existence.

4. Under the express provisions of the statutes of the State of California, the contribution of a limited partner may be cash or other property but not services. It is of no particular significance that the limited partner was kept out of the busi-

ness, since limited partners normally have no part in its management or control.

5. The Commissioner erroneously and wrongfully included in the gross income of the parents for the fiscal year ended May 31, 1945, the distributive share of the partnership income for the fiscal year ended April 30, 1945, in the sum of $24,100.04, which belonged to Betty Lou Rogers.

6. In Civil Action No. 12,329, the plaintiff is entitled to recover of and from the defendant, the United States of America, the sum of $10,325.32 together with interest thereon as provided by law, and plaintiff's costs and disbursements incurred herein.

7. In Civil Action No. 12,328, the plaintiff is entitled to recover of and from the defendant, the United States of America, the sum of $10,434.32 together with interest thereon as provided by law, and plaintiff's costs and disbursements incurred herein.